18-1267
United States v. Taj Williams

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2019

(Argued: September 24, 2019                    Decided: November 22, 2019)

Docket No. 18-1267-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

TAJ WILLIAMS,

*Defendant-Appellant*.

_____

Before: CALABRESI, POOLER, and PARK, *Circuit Judges*.

Appeal from United States District Court for the Western District of New

York (Wolford, *J.*) convicting defendant Taj Williams on charges of arson and

possession of unregistered Molotov cocktails after a jury trial. Because we find

that Williams's arguments on appeal lack merit, we affirm the conviction and sentence.

Affirmed.

Judge Calabresi and Judge Park concur in separate opinions.

_____

> MARTIN J. VOGELBAUM, Federal Public Defenders of the Western District of New York, Buffalo, NY, *for Defendant-Appellant Taj Williams*.
>
> TIFFANY H. LEE, Assistant United States Attorney *for* James P. Kennedy, United States Attorney for the Western District of New York, Rochester, NY, *for Appellee United States of America*.

POOLER, *Circuit Judge*:

## BACKGROUND

Defendant-Appellant Taj Williams appeals from the April 17, 2018 judgment of conviction and sentence for violations of 18 U.S.C. § 844(i) (damaging and destroying a building used in interstate commerce by fire) and 26 U.S.C. §§ 5841, 5845(a)(8), 5845(f), 5861(d) and 5871 (possession of unregistered Molotov cocktails) following a jury trial in the United States District Court for the Western District of New York (Wolford, *J.*). He challenges his conviction on the grounds

2

that the district court committed plain error in the jury instructions; that he was convicted of a legally impossible crime in violation of his due process rights; that his custodial statements were made involuntarily; and that the district court overstated his criminal history at sentencing.

In the early morning hours on January 18, 2015, an individual set fire to the Chili Express convenience store in Rochester, New York. Surveillance footage showed a white Chevy Trailblazer with a distinctive black hood and missing fuel cap drive by the store twice at 2:52am and 3:18am. A few minutes later, the footage captured an individual with a dark gray sweatshirt walk around the corner and approach the store with what appeared to be a tire iron. The person used the tire iron to smash the glass on the front door. He then took out two Molotov cocktails from a cellophane bag that was leaking liquid, lit them, and threw them inside. He also threw a third unlit device into the blaze before running away. The video was too blurry to identify the person. But other video footage showed an individual subsequently running through the snow back to the Trailblazer, which was parked on a nearby side street.

The Rochester Fire Department ("RFD") began investigating the cause of the fire a few hours later, quickly concluding that it was deliberately ignited. From the

3

outset, RFD investigators had suspected Taj Williams's involvement based on a previous arson investigation they conducted at the same convenience store two years earlier. The RFD ran record checks on the white SUV and found a possible match for a Chevy Trailblazer owned by Williams's girlfriend. An RFP investigator drove by her house where he saw it parked in the driveway.

Law enforcement eventually stopped Williams driving the SUV and arrested him for failing to have a valid driver's license. He was brought to the Public Safety Building downtown where officers questioned him. The officers also applied for a warrant to search the car, which was approved and executed. The search turned up a tire iron, a gray sweatshirt, a green BIC lighter, a red gas can, and a blue two-tone U-Haul blanket, which was ripped up.

On February 11, 2016, a grand jury sitting in the Western District of New York returned a three-count indictment against Williams, but the government eventually withdrew the second count. Count 1 charged Williams with arson in violation of 18 U.S.C. § 844(i); and Count 3 charged him with the possession of unregistered Molotov cocktails in violation of 26 U.S.C. §§ 5841, 5845(a)(8), 5845(f), 5861(d) and 5871. A trial began on September 12, 2017, and the jury found him

4

guilty on both counts. After a hearing, the district court sentenced Williams to 104 months' imprisonment and 3 years' supervised release.

## DISCUSSION

Williams first contends that the district court committed plain error when giving its jury instructions on arson and attempted arson. He argues that the court articulated a "legally incoherent" theory of liability, namely that it suggested to the jury that it could convict Williams of attempted arson with a reckless mental state. Because Williams did not object to the jury instructions, we apply a plain error standard of review. *United States v. Prado*, 815 F.3d 93, 100 (2d Cir. 2016). In order to satisfy this standard, an appellant must demonstrate that

> (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010) (alterations and internal quotation marks omitted)).

Williams has failed to demonstrate error, let alone plain error. Significantly, when instructing the jury on attempt, the district court stated that the government

5

must prove that the "defendant intended to commit the crime charged." App'x at 802. That instruction is consistent with the requisite mental state for intentional arson and not for reckless arson.

Even if we assume, arguendo, there was error, Williams has not shown that he was in any way prejudiced by it. In *United States v. Ferguson*, 676 F.3d 260, 277 (2d Cir. 2011), we stated that a defendant would not be prejudiced by a district court's error in instructing the jury on a potential theory of liability if "the jury would have necessarily found the defendant[] guilty on one of the properly instructed theories of liability." Here, the evidence at trial overwhelmingly supported a completed arson. The dispute between the parties centered on the identity of the perpetrator and not on the nature of the crime: video footage showed an individual used a tire iron to smash the window of the store and tossed two lit Molotov cocktails inside. From this the jury would have necessarily found that Williams was guilty of a completed—and not an attempted—arson.

Second, Williams argues that New York's ban on Molotov cocktails made it impossible for him to comply with the federal law mandating registration. His argument is foreclosed by *United States v. Shepardson*, 167 F.3d 120, 123-24 (2d Cir. 1999), where we found that in the absence of a federal statutory ban on the

unregistered weapon, registration is not impossible. In fact, the testimony at trial in the instant case confirmed that Molotov cocktails had been registered before in the National Firearms Registration and Transfer Record.

Third, Williams argues that the district court erred in denying his motion to suppress the custodial statements he made to law enforcement. He claims the officers' trickery, combined with his lack of sleep and the length of the interrogation, made his statements involuntary under the Fifth Amendment. We disagree.

In reviewing the denial of a suppression motion, this Court "review[s] the district court's factual findings for clear error, and its application of law to fact *de novo*." *United States v. Pabon*, 871 F.3d 164, 173 (2d Cir. 2017). When the district court's findings are based on credibility determinations, "we give particularly strong deference to a district court finding." *United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008). This Court is "not allowed to second-guess the factfinder's credibility assessments, and where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Medunjanin*, 752 F.3d 576, 584-85 (2d Cir. 2014) (internal quotation marks, alteration, and citation omitted). At the suppression hearing, the district

7

court had the opportunity to evaluate Williams's demeanor in watching a video of the interrogation, and it also heard the testimony of one of the officers. After reviewing the video and the testimony, we find that the district court did not abuse its discretion in determining that the interrogation did not rise to the level of a constitutional violation.

Last, Williams argues that the district court erred in overstating his criminal history at sentencing. He contends that the district court procedurally erred by including his conviction for falsely reporting an incident in the third degree under New York Penal Law § 240.50 in his criminal history because it is similar to an offense the Guidelines exclude from consideration—providing false information to a police officer. *See* U.S.S.G. § 4A1.2(c)(1). We need not decide whether this was error because even if that conviction were excluded, Williams's criminal history category—and therefore his recommended Guidelines range—would not change. Any error by the district court was therefore harmless. We also conclude that the district court did not otherwise err in calculating Williams's criminal history.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

GUIDO CALABRESI, *Circuit Judge*, concurring:

I join the Court's opinion in full. I write separately to point out two peculiarities in our Court's U.S.S.G. § 4A1.2(c)(1) jurisprudence. The first is that we have, perhaps unintentionally, given district courts an incentive to engage in fact-finding regardless of whether a defendant's state statute of conviction makes criminal a broad or narrow class of conduct. Some of our prior cases suggest that we will deferentially review a district court's determination as to whether an offense meets section 4A1.2(c)(1)'s similarity requirement whenever the district court engages in fact-finding about the particular characteristics of the defendant or the defendant's offense—such as by examining the uncharged conduct underlying the offense. *See, e.g., United States v. Valente*, 915 F.3d 916, 921–22 (2d Cir. 2019). But if we must defer to the district court's fact finding regardless of the actions that the relevant state statute's text makes criminal, district courts could base their decisions on a defendant's individual characteristics and make *de novo* review of the issue as a matter of law virtually impossible. This would be in tension with some of our holdings. *See, e.g., United States v. Sanders*, 205 F.3d 549, 553–54 (2d Cir. 2000) (a New York Penal Law § 165.15(3) conviction for turnstile jumping does not, as a matter of law, count under U.S.S.G. § 4A1.2(c)).

While I have no doubt that district courts will do their best to apply our standard for whether a state statute is broad or narrow, the error mentioned above comes about because our standard on this point is unclear. This case presents a perfect example. As Judge Park notes in concurrence, New York Penal Law § 240.50, taken as a whole, may well be a broad statute, able to be committed in various ways. But Williams was manifestly convicted of violating a particular subsection of a subsection of that statute, New York Penal Law § 240.50(3)(a).[1] And this subsection punishes only "[g]ratuitously report[ing] to a law enforcement officer or agency []

---

[1] While Williams' PSR originally stated only that he had been convicted of New York Penal Law § 240.50, by the time of Williams' sentencing the probation officer had obtained the police report and judgment of conviction underlying this offense and provided those documents to the court. *See* App'x 901. Those documents clarified that Williams was convicted solely of New York Penal Law § 240.50(3)(a).

the alleged occurrence of an offense or incident which did not in fact occur." The action punished by the text of this subsection, falsely reporting an incident to law enforcement, is essentially indistinguishable from Guideline § 4A1.2(c)'s "[p]roviding false information to a police officer." A conviction for this, under the Guidelines, is expressly *not* to be included in a defendant's criminal history.

I do not decide today whether the district court should have considered only the statutory subpart of which Williams was convicted or whether it properly considered the broader statute. I note only that our precedents do not clearly demand either answer, and, as a result, the district court, by making factual findings that would be appropriate under the broader statute, effectively made its decision subject only to deferential review.

Second, I note that our "due deference" standard in these cases may no longer be on firm constitutional footing. Our original decision to give "due deference" in this instance derived from a statutory mandate. *See United States v. Morales*, 239 F.3d 113, 118 (2d Cir. 2000); 18 U.S.C. § 3742(e). But the Supreme Court found that statute, and its "due deference" requirement, unconstitutional. *See United States v. Booker*, 543 U.S. 220, 245 (2005). We have not since *Booker* reexamined whether the "due deference" standard—now that it is separated from its unconstitutional origins—is the appropriate one in the peculiar context of this Guideline. We have reaffirmed that the due deference standard is generally appropriate when we are called to review a district court's application of facts to the Guidelines. *See United States v. Agudelo*, 414 F.3d 345, 348 (2d Cir. 2005). And I do not for a moment suggest that we revisit that general proposition. It is only in the context of the "similar to" inquiry, where, as I have described above, our precedents may provide district courts with the choice, and thus an incentive, to convert a question of law reviewed *de novo* into a mixed question of fact and law reviewed deferentially, that I think the appropriateness of the due deference standard may be in question.

Nevertheless, I join today's opinion, and leave both these questions for another day, when they are necessary to the disposition of a case before us.

MICHAEL H. PARK, *Circuit Judge*, concurring:

I join the Court's opinion in full. I write separately for two reasons: (1) to note that I would affirm the district court's inclusion of Williams's prior conviction in his criminal history at sentencing; and (2) to respond to Judge Calabresi's concurrence.

First, falsely reporting an incident in the third degree under New York Penal Law § 240.50 is broad and can be committed in various ways. As a result, the district court appropriately looked to Williams's underlying conduct and determined that it was distinct from crimes that should not be considered part of a defendant's criminal history under the Guidelines.[1] *See* U.S.S.G. § 4A1.2(c)(1). In *United States v. Morales*, 239 F.3d 113 (2d Cir. 2000), we held that when "a statute punishes a range of conduct under [a] broad rubric . . . the comparison contemplated by section 4A1.2(c) must focus on the particular conduct of the defendant." *Id.* at 118. And because the sentencing judge making the comparison is applying the Guidelines to the facts, we give "due deference" to the district court, which considered the conduct underlying Williams's previous conviction and applied the approach articulated by this Court. *See id.*; *see also* U.S.S.G. § 4A1.2 cmt. n.12(A). Thus, although the Court affirms the district court's sentencing of Williams on harmless-error grounds, I note that there was no error, harmless or otherwise.

---

[1] Judge Calabresi notes that the district court could have limited its review to the text of § 240.50(a)(3) instead of analyzing Williams's underlying conduct because he was "manifestly convicted of violating [that] particular subsection." But the Presentence Report ("PSR") did not specify which subsection Williams had violated or the underlying conduct, and stated only that he was convicted of falsely reporting an incident in the third degree. *See* PSR ¶ 93; *United States v. Morales*, 239 F.3d 113, 118 (2d Cir. 2000) ("Typically, the pre-sentence report will sufficiently acquaint the sentencing judge with the circumstances of the prior offense."). In light of the PSR, the district court followed our instruction to "focus on the particular facts" when faced with a broad statute and noted that, based on the incident report, "[i]t's very clear in reviewing this information that this was much more than just falsely reporting an incident to a police officer." App'x at 903. The court considered the facts that Williams had staged a burglary of the store at which he was employed, had stolen money from the store, and then had altered the store's video surveillance tape to conceal his activities, all of which demonstrated a "level of culpability [that] is significantly different" than simply reporting false information to a police officer. In my view, it was perfectly reasonable—and as Judge Calabresi acknowledges, entirely consistent with our precedents—for the district court to examine Williams's underlying conduct.

Second, Judge Calabresi expresses concern about the latitude given to district courts in determining whether a prior offense is similar to one listed in U.S.S.G § 4A1.2(c)(1). But our precedents clearly distinguish between "minor offenses that [are] narrow in scope," in which case the decision whether to include a prior offense is reviewed *de novo*, and situations where "a statute punishes a range of conduct," in which case the sentencing judge's application of the Guidelines to the facts of the underlying conduct is to be given "due deference." *Morales*, 239 F.3d at 117–18. I respectfully disagree with the suggestion that district courts may feel incentivized to misapply this standard and "to engage in fact-finding" in an effort to evade *de novo* review.

Finally, Judge Calabresi observes that the standard of "due deference" in these cases "may no longer be on firm constitutional footing." But we have consistently recognized that the due-deference standard in Guidelines-application cases "continue[s] to apply even after *Booker*." *United States v. Agudelo*, 414 F.3d 345, 348 (2d Cir. 2005) (citing *United States v. Garcia*, 413 F.3d 201, 221–22 (2d Cir. 2005)). This case presents no reason to revisit well-settled law nearly 15 years after *Booker*. "Due deference" remains the appropriate standard of review when district courts examine a defendant's conduct to determine whether it was "similar to" crimes that should not be considered part of a defendant's criminal history under the Guidelines.