*United States v. Critten*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of September, two thousand twenty-one.

PRESENT:
> DENNIS JACOBS,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                         No. 20-3703

THOMAS CRITTEN,

> *Defendant-Appellant.*

_____

| | |
|---|---|
| FOR APPELLANT: | MELISSA A. TUOHEY, Assistant Federal Public Defender, *for* Lisa A. Peebles, Federal Public Defender for the Northern District of New York, Syracuse, NY. |
| FOR APPELLEE: | PAUL D. SILVER, Assistant United States Attorney, *for* Antoinette T. Bacon, Acting United States Attorney for the Northern District of New York, Albany, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Suddaby, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on October 21, 2020, is **AFFIRMED**.

Defendant-Appellant Thomas Critten appeals from the judgment entered following his guilty plea to one count of possession with intent to distribute cocaine base, *see* 21 U.S.C. § 841(a)(1), (b)(1)(B), having preserved his challenge to the district court's denial of his motion to suppress physical evidence. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

Critten argues on appeal that the district court should have suppressed evidence obtained following the traffic stop that resulted in his 2018 arrest in Massena, New York. He cites two reasons in support. First, Critten asserts that the stop was extended beyond the time required to complete the mission of addressing the traffic violation, and that the extension was unlawful because the officers did not have reasonable suspicion that he was engaged in criminal activity. Second, he submits that the search of his person was unlawful because it took place despite the absence of reasonable suspicion that he was armed and dangerous, and without probable cause for believing that he had committed false personation, the crime with which he was soon after charged.

**1. Detective Shattuck's credibility.** Critten's arguments depend almost entirely on his challenge to the credibility of Detective Arthur Shattuck of the St. Lawrence County Drug Task Force ("Task Force"), who participated in the arrest. Several months after the traffic stop, Shattuck testified during an evidentiary hearing on the motion to suppress. Critten emphasizes in particular the discrepancy he perceives between Shattuck's testimony that the stop was conducted in part based on two tips Shattuck received and the undisputed fact that the contemporaneous police reports make no reference to any such tips.

2

On review of a motion to suppress, we examine the district court's findings of fact for clear error, affording particularly strong deference to its credibility determinations. *United States v. Williams*, 943 F.3d 606, 610 (2d Cir. 2019). The Supreme Court has instructed that "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985).

Shattuck testified that he and other officers on the Task Force would sometimes sit at bus stops in areas like Massena, known as a destination for drug trafficking, and "look[] for people getting off the bus from one of our source cities," such as Syracuse and Jersey City, with little or no luggage. App. 96. The lack of luggage is suspicious, he explained, because Massena is the end of the bus line, so those disembarking there would generally be staying "at least overnight." App. 97. On the morning of Critten's arrest, Shattuck and St. Lawrence County Deputy Sheriff John Jones, among others, waited at stops for the bus to Massena for this very reason. Shattuck recounted that he received a call around 8:30 that morning from Department of Homeland Security Special Agent Christopher Revord, who advised him that an African American man without luggage was traveling by bus from Syracuse to Massena under the name "Jamal Clay." In response, Shattuck sent one or two other Task Force officers to the first bus stop in St. Lawrence County, located in Gouverneur, to wait for the bus and then follow it to the next stop. The officers monitored the bus at each of the seven stops in the county, ending in Massena. When the bus arrived in Massena around 11:00 a.m., Critten disembarked without luggage and waited for seven or eight minutes for a taxi. Shattuck instructed Jones, who was in a marked police vehicle, to follow the taxi out of the lot, because Critten (whom Shattuck then believed to be named "Jamal Clay") was a "person of interest." App. 98.

Shattuck further testified that he and two other officers, all in unmarked vehicles, followed Jones and the taxi out of the bus lot. While he was following Jones, Shattuck received a second tip, this one from the owner of Massena Transport, which employed the taxi driver who was transporting Critten. The Massena Transport owner informed Shattuck

3

that his driver had just picked up an African American male at the Massena bus stop and that the individual had asked to be driven to 6A Parker Avenue, an address that the owner said did not exist. Shattuck then contacted an investigator with the Massena Police Department, who advised that he, too, "did not know of" any location with the address 6A Parker Avenue. App. 106. Shattuck testified that Parker Avenue, only a few miles from the Massena bus lot, was a known area for dealing narcotics, and he said that he had done "a couple of cases on that [street] in the last few years." App. 107.

The bus driver also testified that she had been recruited by Special Agent Revord to provide tips about passengers who appeared to "come from New York all the way to Massena and they don't have any bags."[1] App. 145. She had given about "half a dozen" tips in the preceding "two or three years," App. 146–47, though she did not specifically recall giving a tip about Critten to Agent Revord.

The police reports prepared after the traffic stop do not reflect that Shattuck received tips from Revord or the owner of the taxi company. Critten focuses on those omissions as probative of his position that Shattuck's testimony was not credible and that the stop that followed—and its prolongation beyond the few minutes necessary resolve the taxi driver's traffic violation—did not comport with Fourth Amendment standards.

We identify no clear error in the district court's credibility determination. Although Shattuck's testimony regarding the two tips is not fully corroborated in the contemporaneous written police reports, it is nevertheless both "coherent and facially plausible," *Anderson*, 470 U.S. at 575, and it is not directly contradicted by any other testimony or evidence. Indeed, the record offers some corroboration for Shattuck's account: it is undisputed that in response to Critten's statement that his name was Thomas Critten, Shattuck's first response was to warn Critten that false personation is a crime—a response

---

[1] Critten raises a new argument in reply that any tip about him was impermissibly based only on his race and gender, but both the bus driver and Shattuck stated that suspicions were routinely raised about any passengers who, like Critten, traveled alone to Massena from New York City without any luggage. The bus driver noted specifically in her testimony that the half-dozen tips she had provided to Agent Revord concerned people of different races, ages, and genders.

that would be perplexing if Shattuck had not previously been alerted that the suspect individual was traveling under a different name.

**2. The motion to suppress.** Accepting Shattuck's testimony as true, we turn to a *de novo* review of the district court's denial of the motion to suppress. Critten advances two main arguments.

**A. Prolongation of the traffic stop.** Critten argues that the traffic stop—which he concedes was permissible based on the driver's failure to properly signal before making a turn—was unlawfully extended beyond the time required to complete the mission of addressing the traffic violation, and that the officers could not have had reasonable suspicion that he was engaged in criminal activity. For the following reasons, we disagree.

When Deputy Jones followed Critten's taxi out of the Massena bus lot, he had already received information from Shattuck that the passenger may be a person of interest. He testified that, when he was pulling the taxi over, he observed Critten move from the middle of the back seat to the seat directly behind the driver. He observed that Critten carried no luggage and was unable to produce any identification. When Jones gave the emergency-services dispatcher Critten's name and date of birth, requesting that he search the state records for information about Critten, the dispatcher—after expressing frustration that the database was malfunctioning—informed Jones that the query produced no results.

With this context, we conclude it was reasonable for the officer to suspect that Critten was engaged in criminal activity. Critten's conflicting answers as to his destination and reason for being in Massena confirmed this. He initially told Jones that he had come by bus from Elmira and was going to visit his fiancée at her home on Parker Avenue, but he could not remember the address. Later, he told Shattuck that he had intended to travel from Elmira to his home in Jersey City but had boarded the wrong bus and was taking the taxi to a gas station where he could call his fiancée, who lived in Elmira. Shattuck also knew that the bus had come from Syracuse, not Elmira, which is approximately five hours away from Massena and on another bus route. These circumstances constitute independent "specific and articulable facts" that, "together with rational inferences," reasonably justified the

extension of the traffic stop to allow continued questioning of Critten. *United States v. Elmore*, 482 F.3d 172, 178 (2d Cir. 2007); *see generally United States v. Bailey*, 743 F.3d 322, 333 (2d Cir. 2014) (officers need not eliminate "all possible innocent explanations" for conduct supporting reasonable suspicion).

**B. Search of his person.** Critten submits that he was searched at the scene without reasonable suspicion that he was armed and dangerous or probable cause for believing that he had committed the New York crime of false personation.[2]

Again, we are not persuaded. Accepting Shattuck's testimony as credible, the facts known to the officers at the time of Critten's arrest included the tip about an individual named Jamal Clay, the failure of the dispatcher's search of the database to verify Critten's identity; Critten's claim that he no longer had his bus ticket; the discovery in the back seat of the taxi of a bus ticket in the name Jamal Clay, for the bus on which Critten had just arrived in Massena; and the taxi driver's confirmation that Critten was his first passenger of the day. These circumstances sufficed to support the officers' belief that Critten was committing false personation. *See Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (probable cause for arrest requires "knowledge of, or reasonably trustworthy information as to, facts and circumstances" sufficient to support a "belief that an offense has been or is being committed by the person to be arrested" (internal quotation marks omitted)). The search of Critten's person was therefore conducted incident to a lawful arrest and did not violate the Fourth Amendment.

Accordingly, we conclude—for largely the same reasons as those articulated by the district court in its October 2019 decision and order and highlighted above—that the officers (1) had reasonable suspicion for prolonging the traffic stop to allow further questioning of Critten and a canine search of the vehicle, and (2) had probable cause both to

---

[2] Under New York Penal Law § 190.23, a person is guilty of false personation, a Class B misdemeanor, "when after being informed of the consequences of such act, he or she knowingly misrepresents his or her actual name, date of birth or address to a police officer or peace officer with intent to prevent such police officer or peace officer from ascertaining such information."

arrest Critten for false personation and to conduct a lawful search of his person incident to that arrest.

**C. Frisk for weapons.** Critten also argues that Detective Shattuck lacked reasonable suspicion to frisk Critten for weapons when he exited his car. Whether or not Shattuck had such reasonable suspicion, Shattuck's pat-down produced no evidence, so there was nothing for the district court to suppress in response.

\* \* \*

We have considered Critten's remaining arguments and find in them no basis for reversal. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court