*United States v. Rodriguez*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of April, two thousand twenty three.

PRESENT:
>
> GUIDO CALABRESI,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> *Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

     *Appellee,*

       v.                          No. 22-93

OMAR RODRIGUEZ,

     *Defendant-Appellant.*

———————————————————————

FOR DEFENDANT-APPELLANT:        BARCLAY T. JOHNSON, Assistant Federal Public Defender (Michael L. Desautels,

Federal Public Defender, *on the brief*), Office of The Federal Public Defender, Burlington, VT.

FOR APPELLEE:                    CORINNE M. SMITH, Assistant United States Attorney (Nikolas P. Kerest, United States Attorney, Gregory L. Waples, Assistant United States Attorney, *on the brief*), United States Attorney's Office, Burlington, VT.

Appeal from a judgment of the United States District Court for the District of Vermont (Reiss, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment appealed from, entered on January 4, 2022, is **AFFIRMED**.

Defendant-Appellant Omar Rodriguez appeals from a judgment of the United States District Court for the District of Vermont (Reiss, *J.*), denying his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

In July 2013, Rodriguez pled guilty to one count of kidnapping under 18 U.S.C. § 1201(a), and one count of use of a firearm during a crime of violence

under § 924(c).  During his sentencing hearing, sentencing Judge Murtha heard expert testimony concerning Rodriguez's numerous medical conditions, including diabetes, obesity, depression, and end-stage renal disease, and their impact on his likely life expectancy.  In recognition of Rodriguez's significant medical problems, and while acknowledging Rodriguez's offense was "extremely serious," Judge Murtha sentenced Rodriguez to 262 months' imprisonment—five years below the minimum guidelines sentence range.  J. App'x 144.  Following the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the district court vacated the § 924(c) count and, after analyzing the § 3553(a) factors, reduced Rodriguez's sentence by four years.

In June 2020, Rodriguez filed a motion for compassionate release in which he argued that his numerous medical conditions, his heightened risk for COVID-19, his inadequate medical care, the harsh conditions of confinement, and his extensive rehabilitation constituted "extraordinary and compelling reasons warrant[ing] . . . a reduction" in his sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  After two hearings, the district court denied Rodriguez's motion, finding that Rodriguez had not shown "extraordinary and compelling circumstances" and concluding that even if the court found extraordinary and compelling circumstances, sentence reduction was not warranted under the 18 U.S.C. §

3553(a) sentencing factors due to the "callous, heinous, [and] violent" nature of Rodriguez's crime. J. App'x 448.

"A district court has broad discretion in considering a motion for a sentence reduction," *United States v. Amato*, 48 F.4th 61, 65 (2d Cir. 2022), and we accordingly review the denial of such a motion for abuse of discretion, *United States v. Holloway*, 956 F.3d 660, 664 (2d Cir. 2020).[1] A district court exceeds its discretion when its ruling "rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Parnell*, 959 F.3d 537, 539 (2d Cir. 2020). A choice among permissible views of the evidence cannot be clearly erroneous; instead, factual findings are clearly erroneous only when we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Technodyne LLC*, 753 F.3d 368, 386 (2d Cir. 2014).

Rodriguez argues that the district court's finding that he had not shown extraordinary and compelling circumstances, and its § 3553 analysis, were compromised by clearly erroneous factual findings that: (1) Rodriguez had not recently had prolonged hospitalizations; (2) Rodriguez was receiving adequate

---

[1] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

medical care by the Bureau of Prisons (BOP); (3) Rodriguez is not "terminal"; (4) Rodriguez would not be more likely to receive a kidney transplant in the community; and (5) his expert had testified that the BOP could address his medical care.

For the reasons stated below, we conclude that the district court's factual findings were not clearly erroneous.

*1. Recent Hospitalizations*

The district court did not clearly err in stating, "I could not see evidence of any hospitalizations in 2021 or 2020. If they occurred, there are no discharge summaries from them, and they were not prolonged." J. App'x 446:14-17. Rodriguez points to evidence that he was taken to the hospital numerous times during those years, and sometimes admitted. But the district court's statement related to "prolonged" inpatient hospitalizations, not outpatient visits. J. App'x 446. The records Rodriguez cites are generally consistent with the district court's statement that he had no recent prolonged hospitalizations.

The only exception is evidence that Rodriguez stayed several nights at the hospital following the amputation of one of his toes in 2020. The district court acknowledged the toe amputation during the December 9, 2020 hearing on Rodriguez's motion. Given that the district court was aware of the toe

amputation and characterized Rodriguez's toe condition as stable after the amputation, we cannot conclude that its statement that it was unaware of any "prolonged" hospitalizations in 2020 or 2021 was clearly erroneous.

2. *Adequacy of Treatment*

The district court's finding that "[h]e is being adequately treated by the BOP" is not clearly erroneous. J. App'x 446:18. This finding is amply supported by Rodriguez's expert. When asked whether it would be easier to manage Rodriguez's conditions in prison or in the community, his expert testified that there were competing factors on each side. She ultimately testified that Rodriguez would be better served in the outpatient community setting, but noted that in prison Rodriguez "obviously [has] access to care," he will get his care "regardless of the weather or other factors, and he's got caregivers at the ready." J. App'x 409. Although Rodriguez's expert testified that community treatment would be preferrable, nowhere did she testify that the treatment he was receiving was inadequate, and the district court could reasonably infer from her testimony that his care while incarcerated is adequate.

Evidence that Rodriguez had to have his toe amputated does not render the district court's finding erroneous as a matter of law. Rodriguez suggests that the BOP was slow to recognize the seriousness of his injury and to pursue

treatments. But Rodriguez's expert testified that his toe loss was a result of vascular insufficiency, and that vascular surgeons had evaluated him to see if any interventions could be taken to improve the blood flow in his feet. On this record, we cannot conclude Rodriguez's need for a toe amputation shows that the district court clearly erred in concluding that his overall care was adequate.

Likewise, evidence that Rodriguez's dialysis was sub-optimal and that he would have more treatment options in the community does not compel us to reject the district court's finding. Rodriguez's own expert testified that it "can be quite difficult" to meet the guidelines with respect to which of Rodriguez's measures were often not optimal. J. App'x 412:3. And, although his expert testified that he might have access to home dialysis in the community, she also testified that a number of the challenges to the efficacy of Rodriguez's dialysis are a function of his medical condition. For example, Rodriguez "has a number of problems with his vascular access," which leads to incomplete or missed treatments. J. App'x 406:19. Additionally, Rodriguez does not always receive optimal treatments because of his fistula problems, blood clotting, the ability to sit still, and body size.

In the face of this evidence, we cannot conclude the district court clearly erred in finding that Rodriguez receives adequate medical treatment in custody.

"This court is not allowed to second-guess the factfinder's credibility assessments, and where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Williams*, 943 F.3d 606, 610 (2d Cir. 2019).

### 3. *Non-Terminal Prognosis*

The district court did not clearly err in finding that Rodriguez's expert witness "said he is not terminal." J. App'x 445:6-9. The expert expressly testified that "[Rodriguez is] not terminally ill." J. App'x 421:2.

Rodriguez argues that his expert's testimony that he "is on a downward slide that will pretty much make him not eligible for a transplant from a physical standpoint within . . . a couple of years" shows that he is, in fact, "terminal"—a term that was never defined. J. App'x 421:2-5. Given the expert's direct statement that Rodriguez is not terminal, this other testimony does not compel a contrary conclusion. *See Williams*, 943 F.3d at 610.

### 4. *Likelihood of Transplant in the Community*

The district court did not clearly err when it found that Rodriguez's expert "did not endorse the idea that [Rodriguez] would be more likely to get a transplant in the community as opposed to while incarcerated." J. App'x 447. The expert testified that she thought Rodriguez would do better at getting into

8

the shape necessary for a transplant in the community, but even that was "hard to say" because it would "fall on him" to be compliant with treatment. J. App'x 424.

Nor did the district court err in failing to conclude that Rodriguez would be more likely to get a transplant in the community. Given the evidence of Rodriguez's prior challenges in complying with his treatment while in the community, as well as evidence that Rodriguez had been screened for a transplant at the BOP every two years, even after having been permanently removed from a transplant list while he was in the community due to noncompliance, the court was not compelled to find that he would be more likely to qualify for a transplant if he was released.

*5. Expert's Prior Testimony on BOP Treatment Capability*

Finally, we reject Rodriguez's challenge to the district court's finding that at Rodriguez's initial sentencing, his expert "opined that the BOP could address his medical care." J. App'x 445. He contends that the expert testified only that the BOP could provide dialysis and did not address his full medical condition.

At his sentencing, after his expert testified about his myriad medical issues, the court asked whether the BOP facilities in Massachusetts and Illinois have the "facilities necessary to treat somebody with Mr. Rodriguez's

9

conditions." J. App'x 114-15. The expert said, "Well, that's my understanding that both of these facilities can provide care for people with end stage renal disease. That is dialysis." *Id*. 115. The expert reaffirmed this testimony at the compassionate release hearing.

In the compassionate release ruling, the district court found that the sentencing judge "was well aware of Mr. Rodriguez's medical condition at the time of the sentencing," and that Rodriguez's expert had "opined that the BOP could address his medical care but that she believed his life expectancy was approximately ten years." J. App'x 445.

This finding was not clearly erroneous. In testifying at sentencing about the BOP's capabilities, the expert responded to a question about the BOP's ability to address Rodriguez's "medical conditions," after she had testified about those conditions. J. App'x 114-15. The court was not compelled to find that the expert's testimony at sentencing was solely focused on Rodriguez's end-stage renal disease.

* * *

For the above reasons, we conclude that the district court did not base its decision denying Rodriguez's compassionate release motion on clearly erroneous factual findings. We have considered Rodriguez's remaining arguments and

10

conclude that they are without merit.  Accordingly, we **AFFIRM** the district

court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
